IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | |
|---|---|
| KEITH A. ASHE, | * |
| Plaintiff, | * |
| v. | * Case No.: PWG-15-144 |
| THE PNC FINANCIAL SERVICES GROUP, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINON AND ORDER

Plaintiff Keith A. Ashe claims that Defendant The PNC Financial Services Group, Inc., ("PNC") has infringed on his SPENDOLOGY trademark through PNC's online financial services business, including the "PNC Virtual Wallet." PNC has filed a motion to dismiss for failure to state a claim, arguing that the Trademark Trial and Appeal Board's ("Trademark Board") previous finding that PNC had priority of use of the SPENDOLOGY trademark bars Ashe's current infringement suit. Because Ashe's claim is barred under the doctrine of collateral estoppel, I will GRANT Defendant PNC's motion to dismiss.

### I. BACKGROUND

Ashe, who is *pro se*, alleges that PNC's use of the SPENDOLOGY trademark is "a willful and wanton violation of the Lanham Act and 15 U.S.C. Section 1125(a)." Compl. 1, ECF No. 1. I will treat Ashe's claim as a trademark infringement claim under 15 U.S.C. § 1125(a).

Ashe claims that he demonstrated "use analogous to trademark use [for the SPENDOLOGY trademark] between May 2010 and July 2010" and first began publicly using the SPENDOLOGY trademark on June 21, 2010. Compl. 4. On October 25, 2011, Ashe filed an application for the SPENDOLOGY trademark for "[w]eb-based personal finance tools" and later amended this description to be "[w]eb-based personal finance tools, namely, providing a website featuring non-downloadable instructional videos in the field of finance, online financial calculators, and online information in the field of finance." U.S. Trademark Application Serial No. 85,456,136 (filed Oct. 25, 2011); *see* Def.'s Mot. 5, ECF No. 27; *The PNC Financial Services Group, Inc., v. Ashe dba Spendology and Spendology LLC*, Opp'n No. 91207409, 2013 WL 5820850, at *1 & n.2 (T.T.A.B. 2013) ("*PNC Trademark Opposition*"). Ashe's trademark application was published in the United States Patent and Trademark Office's Official Gazette on June 12, 2012. U.S. Trademark Application Serial No. 85,456,136 (filed Oct. 25, 2011); *see* Compl. 1. PNC did not submit its application for the SPENDOLOGY trademark until the next day, June 13, 2012. U.S. Trademark Application Serial No. 85,650,817 (filed June 13, 2012).

Ashe and PNC traded cease-and-desist letters regarding the use of the trademark. Compl. 1. On October 10, 2012, PNC "filed a Notice of Opposition with the Trademark Trial and Appeals Board to prevent the registration of Plaintiff's mark." *Id.* Ashe and PNC filed cross-motions for summary judgment in the proceedings before the Trademark Board. *PNC Trademark Opposition*, 2013 WL 5820850, at *1. On October 15, 2013, the Trademark Board found that "there is no genuine dispute of material fact that [PNC] has established its prior use of the mark SPENDOLOGY for an 'online money management tool that allows account holders to track balances, budgets, and expenses, by category and time period' over [Ashe]." *Id.* at *6. As

2

a result, the Trademark Board granted PNC's motion for summary judgment and refused Ashe's application to register the SPENDOLOGY trademark. *Id.*

PNC has filed a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Def.'s Mot. Ashe filed an opposition, Opp'n, ECF No. 29, and PNC filed a reply, Reply, ECF No. 30. A hearing is unnecessary. *See* Loc. R. 105.6.

## II. DISCUSSION

Fed. R. Civ. P. 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff is proceeding *pro se*, and his complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff from pleading plausible claims. *See Holsey v. Collins*, 90

F.R.D. 122, 128 (D. Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)). I must accept the facts as alleged in Plaintiff's complaint as true. *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).

If an affirmative defense "'clearly appears on the face of the complaint,'" the Court may rule on that defense when considering a motion to dismiss. *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012) (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000) (citation and quotation marks omitted)). One such affirmative defense is collateral estoppel, also known as issue preclusion. "*Res judicata* and collateral estoppel 'are based upon the judicial policy that the losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on issues raised, or that should have been raised.'" *Grady Mgmt., Inc. v. Epps*, 98 A.3d 457, 472 (Md. Ct. Spec. App. 2014) (citation omitted). While "[c]ollateral estoppel has often been described as a doctrine absorbed within *res judicata*," it is a separate doctrine that "operates collaterally to preclude relitigation of *issues* that the same parties already had litigated." *GAB Enters., Inc. v. Rocky Gorge Devel., LLC*, 108 A.3d 521, 530 (Md. Ct. Spec. App. 2015). *Cf. id.* ("*Res judicata* holds parties to a *claim* that they have previously litigated . . . .") (emphasis added). When considering this defense, "'a court may judicially notice facts from a prior judicial proceeding.'" *Brooks v. Arthur*, 626 F.3d 194, 199 n.6 (4th Cir. 2010) (quoting *Brooks v. Arthur*, 611 F. Supp. 2d 592, 597 (W.D. Va. 2009)).

Plaintiff claims that he "demonstrated use analogous to trademark use between May 2010 and July 2010. Plaintiff's first public use of the SPENDOLOGY trademark began on July 21, 2010." Compl. 4. Accordingly, from the face of his complaint, Ashe clearly appears that he is asserting priority regarding the SPENDOLOGY trademark. As discussed below, in making these claims, Plaintiff is attempting to relitigate issues—whether he demonstrated use analogous

4

to trademark use and whether he had priority of use for the SPENDOLOGY trademark vis-à-vis PNC—that were previously decided by the Trademark Board. *See PNC Trademark Opposition*, 2013 WL 5820850, at *6. As a result, it is appropriate for me to determine, in light of Defendant's motion to dismiss, if Plaintiff's claims are barred under the doctrine of collateral estoppel. *See Kalos v. Centennial Sur. Associations*, 2012 WL 6210117, at *3 (granting defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss on collateral estoppel grounds because plaintiff's statement in his complaint that bonds were fraudulent or invalid was refuted in prior judicial proceedings).

PNC argues that Trademark Board "decisions are entitled to preclusive effect when the ordinary elements of issue preclusion are met." Def.'s Mot. 5. PNC claims that Ashe is barred from bringing his suit "[b]ecause having prior rights is one of the required elements of a trademark infringement claim and that issue has already been decided against [Ashe]" in the Trademark Board's decision in favor of PNC's opposition to Ashe's SPENDOLOGY trademark application. *Id.*; *see also PNC Trademark Opposition*, 2013 WL 5820850, at *6.

The Supreme Court recently held that "a court should give preclusive effect to [Trademark Board] decisions if the ordinary elements of issue preclusion are met." *B & B Hardware, Inc., v. Hargis Indus., Inc.,* 135 S. Ct. 1293, 1299 (2015). The burden is on PNC to demonstrate that collateral estoppel applies to give preclusive effect to the Trademark Board's decision in *PNC Trademark Opposition*:

> To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding.

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004). PNC has demonstrated that all five required elements are present in this case.

    A. **Identical Issues**

        *1. Priority in Previous Registration Proceeding*

In registration cases, priority is determined by "[t]he common law and Lanham Act," which "require that trademark ownership be accorded to the first bona fide user." *Hydro-Dynamics, Inc. v. George Putnam & Co., Inc.,* 811 F.2d 1470, 1472 (Fed. Cir. 1987). "[T]he exclusive right to use of a mark . . . claimed as a trademark is founded on priority of appropriation." *Id.* (quoting *New England Duplicating Co. v. Mendes*, 190 F.2d 415, 417 (1st Cir. 1951)). Registration of a trademark constitutes constructive use of the mark. 15 U.S.C. § 1057(c). Registration of a mark is "prima facie evidence that the registrant is the owner of the mark" and "the registrant is granted a presumption of ownership, dating to the filing date of the application for federal registration." *Sengoku Works, Ltd. v. RMC Intern., Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). However, "[t]o acquire ownership of a trademark, it is not enough to have invented the mark or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services." *Id.*

An applicant in trademark registration proceedings may establish an earlier priority date than the date of registration through use analogous to trademark use. *See, e.g.*, *Shalom Children's Wear Inc. v. In-Wear A/S*, 26 U.S.P.Q. 2d 1516, *4*5 (1993); *PNC Trademark Opposition*, 2013 WL 5820850, at *3.

> Use analogous to trademark use . . . is non-technical use of a trademark in connection with the promotion or sale of a product under circumstances which do not provide a basis for an application to register, usually because the statutory requirement for use on or in connection with the sale of goods in commerce has not been met. Although never considered an appropriate basis for an application

to register, such use has consistently been held sufficient use to establish priority rights as against subsequent users of the same or similar marks.

*Shalom*, 26 U.S.P.Q.2d 1516, at *5. "Use analogous to trademark use means use of a nature and extent such as to create an association of the term with the user's goods." *Malcolm Nicol & Co., Inc. v. Witco Corp.,* 881 F.2d 1063, 1065 (Fed. Cir. 1989) (quoting 1 J. McCarthy, *Trademarks and Unfair Competition* § 20:4 at 1023–26 (1984)) (internal quotation marks omitted).

In the prior proceedings before the Trademark Board, it found that "there is no genuine dispute of material fact that [PNC] has established its prior use of the mark SPENDOLOGY" over Ashe. *PNC Trademark Opposition*, 2013 WL 5820850, at *6. The Trademark Board determined that PNC proved it had "a proprietary interest in the mark SPENDOLOGY that was obtained prior to the filing date of applicant's application, October 25, 2011, or prior to any date of use on which applicant may rely, including any use analogous to trademark use." *See id.* at *3. Specifically, the Trademark Board determined that Ashe's "indirect evidence fails to establish use analogous to trademark use as it does not support an inference of identification in the mind of the consuming public." *Id.* at *5.[1]

### 2. *Priority in Infringement Proceedings*

In infringement cases, "trademark ownership is acquired by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co., Inc.,* 332 F.3d 264, 267 (4th Cir. 2003) ("When more than one user claims the exclusive right to use an unregistered trademark, priority is determined by 'the first actual use of [the] mark in a genuine commercial transaction.'") (citations omitted). Federal courts have applied the use analogous to trademark use standard to determine priority in infringement cases. *See Int'l Healthcare Exch., Inc. v.*

---

[1] The Trademark Board also determined that "[a]pplicant does not claim, nor does any evidence support any other use, e.g., trade name use, that might give it priority." *PNC Trademark Opposition*, 2013 WL 5820850, at *3 (footnote omitted).

*Global Healthcare Exch., LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007); *Hous. & Servs., Inc. v. Minton*, No. 97 CIV. 2725(SHS), 1997 WL 34949 (June 24, 1997).

> Such analogous use of a mark has consistently been held sufficient . . . to establish priority rights as against subsequent users of the same or similar marks, as long as the use is open and notorious or is of such nature and extent that the [mark] has become popularized in the public mind.

*Int'l Healthcare*, 470 F. Supp. 2d at 371 (internal quotation marks omitted).

This Court has previously found that the issue of priority determined in an earlier proceeding before the Trademark Board "is identical to priority of use in an infringement suit." *Coryn Group II, LLC v. O.C. Seacrets, Inc.*, No. WDQ-08-2764, 2011 WL 6202479, at *2 (D. Md. Dec. 6, 2011) (citing *Material Supply Int'l, Inc. v. Sunmatch Indus. Co.*, 146 F.3d 983, 990 (D.C. Cir. 1998)). In *Coryn Group II*, this Court noted that a jury had previously determined that the defendant in an infringement suit had priority of use over the party who had registered the trademark. *Id.* This Court therefore determined that it was bound under collateral estoppel to rule against the party who had registered the trademark in its appeal of the Trademark Board's cancellation of its registration because that party did not have priority of use. *Id.* Similarly, the D.C. Circuit found that a cancellation case before the district court on appeal from the Trademark Board and a corresponding infringement claim "involved the common legal issue of which party owned the . . . trademark, resolution of which in turn depended on the common factual issue of which party first used the mark." *Material Supply*, 146 F.3d at 988. Ashe has offered no precedent directly addressing any differences between the issue of priority of use in registration cases and the issue of priority in infringement cases. Accordingly, the issues are the same for collateral estoppel purposes.

> 3. B & B Hardware *Does Not Stand for Position That Priority in Registration Cases Differs from Priority in Infringement Cases*

Ashe argues, however, that *B & B Hardware* supports his position that the issue of priority in *PNC Trademark Opposition* is different from the issue of priority in his infringement case before this Court. Opp'n 8. In *B & B Hardware*, the Supreme Court broadly held that "a court should give preclusive effect to [Trademark Board] decisions if the ordinary elements of issue preclusion are met" before turning to examine the narrower question (regarding likelihood of confusion) of whether the issue before the Trademark Board in that particular registration proceeding was identical to the issue before the district court in the infringement case. *B & B Hardware*, 135 S. Ct. at 1306–08. In the context of this narrower inquiry on the likelihood of confusion issue, the Supreme Court explained certain limits (inapplicable here) to the preclusive effect of Trademark Board determinations. *Id.* at 1308. Importantly, *B & B Hardware* did not involve the issue of priority in registration or infringement proceedings but rather the distinct issue of likelihood of confusion. *See id.* at 1306–07. The Supreme Court discussed how the Trademark Board examines the likelihood of confusion issue in registration proceedings from the perspective of the trademark application. *Id.* at 1307 ("[T]he [Trademark] Board typically reviews only the usages encompassed by the registration."). When determining likelihood of confusion in trademark suits filed in district court, the court examines marketplace usage. *See id.* In this context, the Supreme Court explained a limit to the preclusive effect of Trademark Board likelihood of confusion determinations:

> If a mark owner uses its mark in ways that are materially the same as the usages included in its registration application, then the [Trademark Board] is deciding the same likelihood-of-confusion issue as a district court in infringement litigation. By contrast, if a mark owner uses its mark in ways that are materially unlike the usages in its application, then the [Trademark Board] is not deciding the same issue. Thus, if the [Trademark Board] does not consider the marketplace usage of the parties' marks, the [Trademark Board]'s decision should "have no later preclusive effect in a suit where actual usage in the marketplace is the paramount issue."

*B & B Hardware*, 135 S. Ct. at 1308 (citation omitted). Based on this reasoning, Ashe argues that, because the Trademark Board considered his actual marketplace usage of the SPENDOLOGY mark and Ashe's usage of the trademark differed from the usage described in his trademark application, then issue preclusion does not apply. Opp'n 10.

Ashe's argument overlooks the scope of the Supreme Court's findings in *B & B Hardware*. The Supreme Court's analysis on whether the issues before the Trademark Board and the district court were identical concerned the question of likelihood of confusion, not priority of use. *See B & B Hardware*, 135 S. Ct. at 1308. Likelihood of confusion was not disputed by the parties in *PNC Trademark Opposition*. 2013 WL 5820850, at *2. Rather, the issue before the Trademark Board was whether Ashe or PNC had priority of use of the SPENDOLOGY trademark. *Id.* at *3–*6. Therefore, the Supreme Court's finding that preclusion is inappropriate where "the [Trademark Board] does not consider the marketplace usage of the parties' marks" with respect to the likelihood of confusion issue does not apply to the distinct issue of priority of use relevant here.

For these reasons, PNC has shown that the Trademark Board's determination of priority of use for the purposes of trademark applications is the same as the determination of priority of use for the purposes of infringement claims. And, as noted above, both this Court in *Coryn Group II* and the D.C. Circuit in *Material Supply* have determined that the issue of priority of use is the same in registration proceedings before the Trademark Board and in infringement proceedings before courts. Ashe has failed to cite contrary authority. Therefore, I find that the priority of use issue considered by the Trademark Board in the registration proceeding regarding the SPENDOLOGY trademark is identical to the priority of use issue in the infringement case before me.

### B. Issue Resolved

The issue of PNC's priority of use of the SPENDOLOGY trademark relative to Ashe was resolved in the Trademark Board's ruling. *PNC Trademark Opposition*, 2013 WL 5820850, at *6 ("[T]here is no genuine dispute of material fact that [PNC] has established its prior use of the mark SPENDOLOGY . . . .").

### C. Issue Critical and Necessary

The issue of priority was "critical and necessary to the judgment" by the Trademark Board in *PNC Trademark Opposition* refusing Ashe's registration of the SPENDOLOGY trademark. With respect to Ashe's and PNC's cross-motions for summary judgment, the Trademark Board characterized the dispute by stating "[i]n essence, each party argues that it has priority." *PNC Trademark Opposition*, 2013 WL 5820850, at *1. Priority is a "threshold question" in registration proceedings before the Trademark Board. *AAI Motorsports Co. v. Express Auto Options, Inc.*, Cancellation No. 92043113, 2006 WL 2860214, at *3 (T.T.A.B. 2006) ("With respect to any likelihood of confusion claim under Section 2(d) [of the Lanham Act], the threshold question is priority."). If the Trademark Board had found in favor of Ashe with respect to the priority of his use of the SPENDOLOGY trademark, Ashe would have prevailed in registering the trademark over PNC's opposition. *See PNC Trademark Opposition*, 2013 WL 5820850, at *3. Clearly, then, priority was critical and necessary to the Trademark Board's judgment.

### D. Judgment Final

The Trademark Board's decision is final. PNC states, and Ashe does not contest, that Ashe did not appeal the Trademark Board's decision. *See* Def.'s Mot. 8; Opp'n 7. As a result, PNC has demonstrated the finality of the decision in *PNC Trademark Opposition*.

### E. Full and Fair Opportunity

Finally, the Supreme Court has recognized that Trademark Board proceedings in registration cases can provide sufficient procedures to permit issue preclusion in later infringement cases brought in district court. *See B & B Hardware,* 135 S. Ct. at 1310. It is not necessary that the Trademark Board and courts have identical procedures. *Id.* "Rather than focusing on whether procedural differences exist—they often will—the correct inquiry is whether the procedures used in the first proceeding were fundamentally poor, cursory, or unfair." *Id.* (citing *Montana v. United States*, 440 U.S. 147, 164 & n.11 (1979)).

There is no evidence that the Trademark Board's procedures were "ill-suited" for the particular issue of determining whether Ashe or PNC had priority of use of the SPENDOLOGY trademark. *See id.* The Trademark Board applied the Fed. R. Civ. P. 56 standard for summary judgment proceedings, *PNC Trademark Opposition*, 2013 WL 5820850, at *1, and considered the parties' cross-motions for summary judgment after weighing the parties' discovery responses. *Id.* at *2. PNC states, and Ashe does not contest, that Ashe "served interrogatories and document requests on PNC directed to challenging PNC's claimed first use date of August 2010." Def.'s Mot. 8. Ashe had a full and fair opportunity to litigate the issue of priority before the Trademark Board.

In sum, for these reasons, PNC has demonstrated that all five elements required for issue preclusion are present with respect to the Trademark Board's determination that PNC had priority of use of the SPENDOLOGY trademark. Because priority of use is a required element

for a trademark infringement claim, *see, e.g.*, *Emergency One*, 332 F.3d 267–68, Ashe's claim is barred under the doctrine of collateral estoppel.[2]

## **ORDER**

Accordingly, it is this 17th day of November, 2015, hereby ORDERED that Defendant's motion to dismiss, ECF No. 27, IS GRANTED. The Clerk SHALL DISMISS this case.

So ordered.

/S/
Paul W. Grimm
United States District Judge

dpb

---

[2] At the end of Plaintiff's opposition, he asserts the conclusory statement that "[t]he evidence presented demonstrates that the Defendant willfully and wantonly violated the Lanham Act and 15 U.S.C. § 1125(a)," and states that "the Court should grant summary judgment for the Plaintiff." Opp'n 21–22. As an initial matter, it is inappropriate and procedurally defective for Plaintiff to insert a request for summary judgment in his favor inside his opposition to Defendant's motion to dismiss. Plaintiff's motion for summary judgment may be denied on these grounds alone. However, because I will grant Defendant's motion to dismiss for the reasons set forth above, I will deny Plaintiff's request for summary judgment as moot.